264 So.2d 267 (1972)
Mid R. JONES
v.
DOUGLAS PUBLIC SERVICE and Liberty Mutual Insurance Company.
No. 5062.
Court of Appeal of Louisiana, Fourth Circuit.
June 20, 1972.
Rehearing Denied July 18, 1972.
*268 Stephen L. Huber, New Orleans, for defendants-appellants.
Orlando G. Bendana, New Orleans, for plaintiff-appellee.
Before REGAN, REDMANN and BAILES, JJ.
REGAN, Judge.
The plaintiff, Mid R. Jones, filed this suit against the defendants, Douglas Public Service and Liberty Mutual Insurance Company, its workmen's compensation insurer, endeavoring to recover the sum of $14,000.00 representing a claim for total and permanent disability under the Louisiana Workmen's Compensation statute which disability he asserts, was incurred by him as the result of an accident on July 9, 1968, while in the course of his employment with the principal defendant.
The defendants answered and denied that the plaintiff was entitled to any compensation.
After a trial on the merits, judgment was rendered in favor of the plaintiff awarding him compensation for total and permanent disability at the rate of $35.00 per week for a period not to exceed 400 weeks. From that judgment, the defendants have prosecuted this appeal.
The record discloses that on July 9, 1968, the plaintiff was employed by Douglas Public Service as a freight handler, which job involves the manual unloading of freight cars. When the accident occurred he was 56 years of age, possessed a fourth grade education, and had never engaged in any type of work other than manual labor.
The accident occurred when a crane struck a pickup truck and pinned Jones between the truck and an iron post. When his co-workers called to the crane operator to pull away, the pressure on the truck was relieved, and the plaintiff fell to the ground. He was then removed to a hospital for treatment.
Following his release from the hospital the plaintiff was examined by Dr. Pierre Espenan, one of the defendants' physicians, who treated him conservatively. He testified that he did not discover anything significantly wrong with the plaintiff and that while he did take some X-rays, he did not take X-rays of the area of the back upon which the lower court predicated its finding of disability.
Dr. Espenan referred the plaintiff to Dr. G. R. Cary, an orthopedist, who examined him on August 15, 1968. He said that the plaintiff complained of occasional low back pain, but that he did not have back discomfort at the time of the examination. He found no objective symptoms and was of the opinion that the plaintiff was capable of returning to his previous employment. Dr. Cary conceded that he did not take Xrays of the portion of plaintiff's spine upon which the lower court's judgment was based, but instead relied upon the Xrays taken by Dr. Espenan.
At the plaintiff's request, he was examined on September 30, 1968, by Dr. G. Gernon Brown, Jr., an orthopedist. He had X-rays taken of the plaintiff's lumbar spine which revealed that he suffered from spondylolisthesis, which is a congenital defect appearing in early childhood, and is degenerative in nature, which permits the fifth lumbar vertebrae to slip forward on the first sacral segment, thus leaving the entire spinal column unattached to the pelvis except by ligamentous support. Dr. Brown testified that individuals afflicted with this particular problem are peculiarly vulnerable to trauma and display symptoms *269 of a more severe nature as the result thereof than persons without this defect. Dr. Brown cautiously testified that he could not definitely connect the accident with the injury to the plaintiff's low back area for the reason that at the time of his examination there were no longer any objective symptoms of trauma and that the only knowledge he had of the trauma was revealed to him by the plaintiff. However, he expressed the opinion that the plaintiff should not work as a freight handler because of the condition of his low back area. Dr. Brown reached substantially the same conclusion when he again examined the plaintiff on February 2, 1971, with the exception that there was more evidence of pain in the plaintiff's back.
When questioned about the condition of spondylolisthesis, both Drs. Espenan and Cary agreed that they did not find this condition to exist for the reason that it can only be diagnosed through the medium of X-rays and that neither of them had Xrays taken of that particular part of the plaintiff's back. They both agreed, however, that a patient with this lower back defect should not engage in the occupation of freight handling.
The record discloses that the plaintiff had no significant prior history of back injury and that he had performed his job as a freight handler all of his life without complaint. He related that in spite of the admonition of Dr. Brown not to return to heavy manual labor it was nevertheless necessary for him to do so because he was forced to support his family and possessed no other training or trade. He concluded by asserting that when he worked he labored in pain.
It is well established by virtue of the jurisprudence emanating from the courts of this state that employers accept employees as they find them. A laborer who is abnormally susceptible to disability from an accident is protected by the provisions of the compensation statute despite the fact that the accident which he incurred would have caused little or no harm to a healthy worker. It is not significant that the condition might alone eventually produce the disability incurred. Thus an employee's disability is compensable when precipitated by an industrial accident, even though a preexisting dormant physical condition or predisposition has contributed thereto. More specifically, the jurisprudence rationalizes that an employee who is disabled by an accident is not to be denied compensation merely because he was already afflicted with a disease or physical condition which, in its ordinary course of progress, might have caused the disability in the natural course of events without any accident.[1]
The foregoing elucidation reveals that the only question posed for the trial court's consideration was one of fact, and that is whether or not the plaintiff's injury of July 9, 1968, aggravated or precipitated his preexisting condition of spondylolisthesis. The judge thereof obviously accepted the plaintiff's version of the evidence presented to him and, therefore, concluded that his condition was aggravated or precipitated by the accident.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence adduced herein so as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants' version of the physical results flowing from the plaintiff's accident. The trial judge accepted the plaintiff's version thereof and our analysis of the record convinces us that the *270 evidence preponderates in his favor and the judgment is, therefore, correct.
For the foregoing reasons, the judgment appealed from is affirmed. The defendants are to pay all costs incurred herein.
Affirmed.
NOTES
[1] See for example, Lum v. Employers Mut. Lia. Ins. Co. of Wis., 216 So.2d 889 (La. App.1968); Skyles v. United Investment Corporation, 46 So.2d 662 (La.App.1950).